# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CLIFFORD W. MILLER,

    Plaintiff

v.

ROMEO ARANAS, et. al.,

    Defendants

Case No.: 3:17-cv-00068-MMD-WGC

**Order**

Re: ECF No. 60

Before the court is Plaintiff's Motion for Leave to File Third Amended Complaint (TAC) (ECF No. 60), declaration of counsel in support of the motion (ECF No. 60-1), and proposed TAC (ECF No. 60-2). Defendants filed a response (ECF No. 61, 61-1 to 61-9) and errata to the response (ECF No. 62, 62-1). Plaintiff filed a reply. (ECF No. 65.)

For the reasons set forth below, Plaintiff's motion is granted and the TAC will be filed as the operative complaint.

## I. BACKGROUND

Plaintiff filed his original complaint and application for leave to proceed in forma pauperis (IFP) on February 2, 2017. (ECF Nos. 1, 1-1.) The court screened the complaint, and dismissed it with leave to amend. (ECF No. 3.) Plaintiff filed a first amended complaint (FAC) on February 27, 2018. (ECF No. 5.) The court screened the FAC and determined Plaintiff could proceed with an Eighth Amendment deliberate indifference to serious medical needs claim based on allegations that he was blind in one eye, he was seen by doctors who told him his condition was treatable but he was not provided the required surgery. (ECF No. 6.)

Plaintiff was proceeding pro se when he filed the complaint and FAC. On August 27, 2019, Terri Keyser-Cooper, Esq., appeared on behalf of Plaintiff (ECF No. 26), and filed a motion for leave to file a second amended complaint (SAC) (ECF No. 27) and proposed SAC (ECF No. 27-2). The court granted the motion, and allowed Plaintiff to proceed with the SAC which asserted an Eighth amendment deliberate indifference to serious medical needs claim against Dr. Romeo Aranas, as well as a claim under Title II of the Americans with Disabilities Act (ADA) against the Nevada Department of Corrections (NDOC). (ECF No. 34, SAC filed at ECF No. 35.)

On November 19, 2019, Plaintiff filed a motion for preliminary injunction seeking the following relief: (1) modification of NDOC's alleged policy of rejecting one-eyed prisoners for corrective surgery; and (2) that his disciplinary conviction for filing a grievance for his ADA claim be expunged. (ECF Nos. 38, 38-1 to 38-5.) Defendants filed a response. (ECF Nos. 45, 45-1 to 45-9.) Plaintiff filed a reply. (ECF Nos. 48, 48-1.)

Plaintiff subsequently filed a motion for partial summary judgment. (ECF Nos. 51, 51-1 to 51-4.) Defendants filed a response. (ECF Nos. 55, 55-1 to 55-8, errata at ECF Nos. 56, 56-1.)

The court held a hearing on the motion for preliminary injunction on March 2, 2020. The court first discussed the motion's request for an order expunging Plaintiff's disciplinary record. Plaintiff asserted that he was improperly disciplined for filing a grievance to exhaust his administrative remedies as to the ADA claim. Plaintiff's counsel explained that this was part of a claim for retaliation under the ADA, but acknowledged that the retaliation claim was not part of the FAC. Deputy Attorney General (DAG) Rands represented that he would discuss with his clients whether they would agree to expunge the disciplinary conviction, which would render that aspect of the motion for preliminary injunction moot.

The court also addressed Defendants' request to postpone resolution of Plaintiff's motion for partial summary judgment because Defendants sought to conduct discovery, including deposing some of Plaintiff's treating doctors. DAG Rands advised the court that NDOC was in the process of having Plaintiff referred to a general ophthalmologist for a consultation regarding cataract surgery. DAG Rands further represented that Plaintiff was already authorized for surgery if it was recommended by the ophthalmologist.

The court ordered that the motion for preliminary injunction and motion for partial summary judgment would be held in abeyance for 90 days so that DAG Rands could confer with his client on the disciplinary issue, and so Plaintiff could be seen by a general ophthalmologist for the surgery consultation and so additional discovery could be conducted. The court allowed Defendants to file a supplement to their response to the motion for partial summary judgment by June 12, 2020, and Plaintiff to file a reply by June 26, 2020. (ECF No. 59.) An extension was granted, and the supplement was filed on June 18, 2020. (ECF Nos. 68, 68-1 to 68-10.) Plaintiff filed his reply on June 30, 2020. (ECF Nos. 69, 69-1 to 69-5.)

On March 15, 2020, Plaintiff filed this motion seeking leave to file the TAC. (ECF No. 60.) Plaintiff's counsel represents that she spoke to Mr. Rands on March 13, 2020, and he informed her that NDOC refused to expunge Plaintiff's disciplinary conviction from his record, which resulted in the filing of this motion to amend to add a claim for retaliation under the ADA. The court will now address the propriety of the amendment.

## II. DISCUSSION

**A. Legal Standard**

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after

service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

In addition, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or office or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. Thus, when reviewing the adequacy of a complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) or 28 U.S.C. § 1915A(b)(1), the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

In reviewing the complaint under this standard, the court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all

doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B. Analysis**

Defendants do not argue, and the court does not find, that amendment will prejudice Defendants, is sought in bad faith, or will result in an undue delay in the litigation. The claim simply alleges that Plaintiff was required to exhaust his administrative remedies as to all claims he intended to pursue in a lawsuit under the Prison Litigation Reform act (PLRA); he initially filed a grievance regarding his Eighth Amendment Claim, and filed a lawsuit alleging the Eighth Amendment claim; he subsequently retained counsel and determined that he needed to amend his lawsuit to assert an ADA claim; therefore, he filed a second grievance asserting violation of the ADA. He contends he was then improperly disciplined for filing the ADA grievance.

The court will now address Defendants' argument that amendment would be futile and the related issue of whether he states a colorable claim for retaliation under Title II of the ADA.

The Ninth Circuit applies the "Title VII burden-shifting framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973), to retaliation claims under the ADA." *T.B. v. San Diego Unified School Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015) (citations omitted), *as amended Nov. 19, 2015*. Under this standard, to make out a prima facie case for retaliation, the Plaintiff must establish that: "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Id.* at 473 (internal quotation marks and citation omitted). The "standard for the 'causal link' is but-for-causation, a more stringent test." *Id*.

In the TAC, Plaintiff alleges he is an inmate who has no prior disciplinary history. He engaged in a protected activity, filing a grievance under the ADA, and suffered an adverse action: discipline for filing a grievance under the ADA. He goes on to aver that there is a causal connection between the discipline and his exercise of his protected rights. He alleges that the adverse action was intentional and made with reckless indifference to his federally protected rights under the ADA. He contends that his only hope for eventual freedom is from the Pardon Board, and to gain any such relief he must have a perfect discipline record. Therefore, he contends he was harmed by the retaliatory discipline. He seeks damages and injunctive relief, including removal and expungement of the discipline from his record. (ECF No. 60-2 at 16-17.)

Plaintiff has alleged facts sufficient to state a claim for retaliation under Title II of the ADA in the TAC. Nevertheless, Defendants argue that amendment to assert a retaliation claim under Title II of the ADA would be futile because: (1) there is no requirement for administrative exhaustion under the ADA, and there was no retaliation because Plaintiff was properly disciplined for filing two grievances arising out of the same claim; (2) the discipline will not

1 affect Plaintiff's chance at a pardon; (3) he cannot proceed with an ADA claim because he did
2 not comply with NDOC's requirements.

3 First, Defendants assert that under Administrative Regulation 740.04, it is an abuse of the
4 grievance procedure to file a grievance that contains specific claims or incidents previously filed
5 by the same inmate. They contend that Plaintiff's second grievance arose out of the same claim
6 and requested the same remedy; therefore, disciplining him for filing the second grievance was
7 proper. They assert that Plaintiff filed a grievance requesting surgery for his eye, and several
8 months later filed a second grievance requesting surgery on his eye; therefore, these are
9 essentially the same grievance. Plaintiff was charged and convicted of abuse of the grievance
10 process because the first and second grievances arose out of the same claim and requested the
11 same remedy. They maintain that the discipline was proper and was not retaliatory. Defendants
12 argue that there is no requirement under Title II of the ADA for administrative exhaustion before
13 filing suit, implying there was no need to file a second grievance.

14 To the extent Defendants are arguing there was no retaliation because Plaintiff was not
15 required to file a grievance under the ADA and therefore he was properly charged with filing two
16 grievances arising from the same claim, this issue was squarely addressed in *O'Guinn v.*
17 *Lovelock Correctional Center,* 502 F.3d 1056 (9th Cir. 2007). There, the Ninth Circuit held that
18 "[t]he plain language of the PLRA, as well as Supreme Court and Ninth Circuit precedent, lead
19 us to conclude that exhaustion is required for ADA [ ] claims." *Id.* at 1061. The Ninth Circuit
20 pointed out that the PLRA clearly states: "No action shall be brought with respect to prison
21 conditions under section 1983 of this title, *or any other Federal law,* by a prisoner confined in
22 any jail, prison, or other correctional facility until such administrative remedies as are available
23 are exhausted." *Id.* (emphasis original, citing 42 U.S.C. § 1997e(a).) The ADA is a federal law;

therefore, a prisoner must exhaust available administrative remedies before bringing an action under the ADA. *Id.* "[E]xhaustion of available administrative remedies is required for *any* suit challenging prison conditions, not just for suits under § 1983." *Id.* (citation and internal quotation marks omitted).

The Ninth Circuit specifically addressed the case Defendants rely on, *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169 (9th Cir. 1999), which was decided prior to *O'Guinn*. The court recognized that Title II of the ADA does not require exhaustion of administrative remedies before filing suit. *Id.* The court noted that, on the other hand, nothing in the ADA exempts an inmate from the PLRA's exhaustion requirement. *Id.* Congress intended the PLRA to "apply to *all* federal laws with respect to prisoner suits, with the intent that prison officials would have the first opportunity to address prison conditions[.]" *Id.* (emphasis added). "This congressional intent would be defeated if prisoners were able to bring federal suits directly in district court wherever a federal statute lacked an exhaustion provision." *Id.* Thus, the PLRA requires that inmates exhaust administrative remedies before filing a claim under Title II of the ADA, even though the ADA itself does not require exhaustion. *Id.* at 1061-62.

Therefore, the court does not find Plaintiff's Title II ADA retaliation claim is futile on this basis. Plaintiff has adequately alleged a claim of retaliation under Title II of the ADA. Defendants may attempt to raise a genuine dispute of material fact as to whether the adverse action was taken because of Plaintiff's disability or because there was a violation of NDOC's grievance procedure in a *motion for summary judgment*; however, for purposes of pleading a claim in the TAC, his allegations are sufficient.

Second, Defendants contend that the "blemish" on his record will have no effect on his chances for an eventual pardon. They assert that he is serving four terms of life without the

8

possibility of parole, and even if he were to appear before the Parole Board, this discipline would not likely be considered. They refer to a Parole Risk Assessment form at ECF No. 61-7.

This form appears to list questions relevant to *parole* risk assessment. One of the areas of inquiry is offenses in custody in the 12 months preceding the hearing date. Preliminarily, Plaintiff's argument is that this could have an impact on a future *pardon* hearing. It is not clear that the *Pardon* Board considers the same criteria as is considered by the *Parole* Board, or whether the *Pardon* Board would consider Plaintiff's entire disciplinary history. Regardless, Plaintiff has sufficiently alleged he was harmed as a result of the adverse conduct because he received a disciplinary sanction. Therefore, the court does not find amendment would be futile on this basis.

Finally, Defendants state that under AR 658 an inmate seeking an accommodation must submit a DOC 2668 Inmate Disability Accommodation Request Form to initiate review of his request, and Plaintiff did not submit the request. AR 658 states that an inmate with a disability that believes he is not being reasonably accommodated will submit a grievance with a written request for accommodation in compliance with AR 740. (ECF No 61-8 at 7.) There is no doubt Plaintiff complied with this requirement. AR 658 later states that an inmate seeking an accommodation shall submit an Inmate Disability Accommodation Request Form (DOC 2668) (*id.* at 8); however, the court is not aware of any federal authority concluding that NDOC's internal requirements for submitting a form requesting an accommodation have any impact on an ADA claim filed in federal court. The PLRA requires an inmate to exhaust administrative remedies before filing suit. NDOC's grievance procedure set forth in AR 740 governs administrative remedies, and therefore, exhaustion, within NDOC. AR 658 contains an internal requirement to submit a form when an inmate seeks an accommodation, but AR 658 does *not*

state that this must be done in order for an inmate to file a federal ADA claim, or otherwise indicate that this is part of the exhaustion of administrative remedies in order to file a lawsuit in federal court. Therefore, the court also finds that the proposed amendment is not futile on this basis.

In sum, the court finds that amendment would not be futile; that Plaintiff states a colorable retaliation claim under Title II of the ADA; and, Plaintiff's motion for leave to file the TAC is granted. The court will separately address the pending motion for preliminary injunction and motion for partial summary judgment.

### III. CONCLUSION

Plaintiff's motion for leave to file the TAC (ECF No. 60) is **GRANTED**. The Clerk shall **FILE** the TAC (ECF No. 60-2). Within **21 days** of the date of this Order, Defendants shall file an answer or otherwise respond to the TAC.

**IT IS SO ORDERED**.

Dated: July 22, 2020

_____<br>
William G. Cobb<br>
United States Magistrate Judge