# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CLIFFORD W. MILLER,

    Plaintiff

v.

ROMEO ARANAS, et. al.,

    Defendants

Case No.: 3:17-cv-00068-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 75

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff Clifford Miller's motion for partial summary judgment with respect to his retaliation claim under Title II of the Americans with Disabilities Act (ADA). (ECF Nos. 75, 75-1 to 75-5.)[1] A response was filed to this motion for partial summary judgment. (ECF Nos. 92, 92-1 to 92-15.)[2] Plaintiff filed a reply brief that addresses both motions for partial summary judgment. (ECF Nos. 96, 96-1 to 96-5.)[3]

---

[1] Plaintiff has filed another motion for partial summary judgment as to his remaining claims under Title II of the ADA, and the Eighth Amendment pursuant to 42 U.S.C. § 1983 (ECF No. 76), which is being addressed in a separate report and recommendation.

[2] The response states that it was filed on behalf of defendant Dr. Aranas; however, the ADA retaliation claim is asserted against the Nevada Department of Corrections (NDOC). (ECF No. 71 at 15:15.)

[3] Plaintiff's counsel states that Defendants responded to both motions in one response, and therefore she has filed a single reply brief; however, the record reflects that Defendants filed a response to the first motion for partial summary judgment on the ADA retaliation claim (ECF No. 92), and a separate response to the second motion for partial summary judgment on the remaining ADA and Eighth Amendment claims (ECF No. 93).

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the NDOC and is proceeding with this action pursuant to 42 U.S.C. § 1983 and the ADA. (Third Amended Complaint (TAC), ECF No. 71.) Plaintiff was pro se when he filed his original complaint, but subsequently secured counsel, Terri Keyser-Cooper, Esq. (ECF No. 26.)

In the TAC, Plaintiff sues NDOC's former Medical Director Dr. Romeo Aranas under section 1983 for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He also sues NDOC for violation of Title II of the ADA and for retaliation under Title II of the ADA. The TAC seeks injunctive relief, general and punitive damages, attorney's fees under section 1988 and costs of suit. (ECF No. 71.)

Plaintiff alleges that in a domestic tragedy in 1999, he shot himself in the head in an attempt to commit suicide, and was in a coma for two weeks and suffered serious injuries including near blindness in both eyes. (ECF No. 71 at 2 ¶ 7.) He awoke one morning in October/November 1999, and his vision had returned in his left eye, but not in his right eye. (*Id.* ¶ 8.) Plaintiff was subsequently placed in the Humboldt County Jail, and in the summer of 2001 he saw an eye surgeon, who informed Plaintiff that in order to correct his vision he required cataract and realignment surgery. Plaintiff was then transferred to the custody NDOC, and has requested eye examinations and surgery since his incarceration in NDOC began in 2001. Plaintiff alleges that there were recommendations and consultations for surgery, but NDOC denied and delayed his requests because of its policies that one good eye is enough, cataract surgery is cosmetic, and non-life threatening surgeries are unnecessary. Plaintiff contends that during this

time he was denied care for his serious medical condition, his eyesight in his right eye has deteriorated.

Plaintiff claims that in denying his requests for treatment and surgery pursuant to NDOC's policies, Dr. Aranas was deliberately indifferent to his serious medical need. In addition, he contends that he is a qualified individual with a disability under the ADA because he is blind in one eye and never learned to compensate for his vision loss. He alleges that he was discriminated against based on his disability because NDOC failed to accommodate his request for a modification of its policies to allow him see a recommended specialist nearly 20 years after surgery had been recommended and denied based on NDOC policies.

In addition, Plaintiff filed a grievance with the prison seeking modification of NDOC's policies under the ADA, in order to exhaust his administrative remedies before suing under the ADA as he is required to do pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Plaintiff proceeded through the required grievance process (set forth in NDOC's Administrative Regulation (AR) 740) to the second level, and received a notice of charges for abuse of the prison grievance process for submitting a grievance that the prison considered duplicative of his prior grievance on the issue of his cataract. Plaintiff contends that under NDOC's regulations and the PLRA, he believed he was required to separately grieve the ADA violation in order to exhaust his administrative remedies and file suit on that claim. Plaintiff was found guilty of the charge and received 15-days canteen loss. He claims that the discipline was retaliatory because he had a right and obligation to separately grieve his ADA violation in order to raise that claim in court.

1   Since the TAC was filed, Plaintiff was authorized for and did receive cataract surgery.

2   Unfortunately, his eyesight has not returned in the right eye. (ECF No. 76 at 3 n. 2; ECF No. 92-

3   7 at 7.)

4   In this motion, Plaintiff states that he seeks partial summary judgment on the issue of

5   liability of the ADA retaliation claim against NDOC, and seeks to go to trial on the issue of

6   damages for this claim. In his reply brief, however, Plaintiff states that he is withdrawing his

7   request for damages as subsequent research determined Plaintiff's only possible relief in an ADA

8   Title II retaliation claim is injunctive relief. (ECF No. 96 at 2 n. 3, 5-6.) Citing *Alvarado v. Cajun*

9   *Operating Co*., 588 F.3d 1261, 1270 (9th Cir. 2009), Plaintiff states that because injunctive relief

10   is the only available remedy, a jury trial is not available, and the court should resolve this claim

11   on summary judgment.

12   Plaintiff's motion mentions that after the TAC was filed, defense counsel offered to

13   dismiss the discipline from Plaintiff's record, which is the injunctive relief Plaintiff is seeking.

14   The court asked the parties to apprise the court as to whether the disciplinary finding had been

15   removed or expunged, which would render the claim for injunctive relief moot. (ECF No. 97.)

16   The parties filed a notice on February 2, 2021, indicating that the disciplinary charges had not

17   been dismissed, but noted that the parties "agreed to continue in discussions relating to a possible

18   settlement of all or part of this matter." (ECF No. 98.)

19   In response to the motion, NDOC argues: there are disputed facts that require denial of

20   Plaintiff's motion; that Plaintiff cannot seek the relief he wants through the ADA; Plaintiff did

21   not properly request an accommodation through the ADA; and, his first grievance was sufficient

22   to satisfy the requirements of the PLRA.

23

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

5

1  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

2  *Anderson*, 477 U.S. at 249.

3       In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

4  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

5  come forward with evidence which would entitle it to a directed verdict if the evidence went

6  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

7  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

8  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

9  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

10  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

11  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

12  party cannot establish an element essential to that party's case on which that party will have the

13  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

14       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

15  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

16  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

17  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

18  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

19  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

20  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

21  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

22  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

23

6

pleadings and set forth specific facts by producing competent evidence that shows a genuine

dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Facts**

The following facts are undisputed unless otherwise noted:

**1. Grievance 2006-30-19027**

On February 28, 2016, Plaintiff filed an informal level grievance, assigned number 2006-30-19027, stating the following: Dating back to 1999, he had issues with his right eye and not being able to see out of that eye. In 2001, he saw a doctor who diagnosed him as having a cataract that required cataract removal and eye realignment surgery. He was then transferred to NDOC, and saw another provider at Lovelock Correctional Center (LCC) in 2003/2004 who also said Plaintiff needed surgery and that Plaintiff would be placed on the list. Plaintiff left NDOC custody for a retrial in 2004, and when he returned to NDOC in 2006, he was told the procedure was cosmetic and the surgery would not be done. On February 26, 2016, he saw an eye doctor at Northern Nevada Correctional Center (NNCC), who concluded Plaintiff had neurological damage and would never see out of his right eye again. He asked to be seen by an outside specialist and receive treatment. (ECF No. 75-2 at 2-4; ECF No. 92-2 at 2-4.)

On May 25, 2016, Plaintiff filed a first level grievance. He reiterated that the issue was the refusal to treat and address his serious right eye issues. He repeated his chronology of events from the informal level grievance, and again requested that he be seen by an outside eye specialist and receive treatment to remove his cataract and realign his eye. (ECF No. 75-2 at 9.) The first level grievance was denied on July 12, 2016. (ECF No. 92-3 at 2.)

1    Plaintiff filed a second level grievance. Dr. Aranas responded to the second level

2  grievance on November 10, 2016, stating he had reviewed Plaintiff's chart and read the previous

3  level grievances where he claimed a refusal to treat and care for him. Dr. Aranas said that the

4  grievance acknowledged multiple visits with providers and specialists. He also advised that

5  Plaintiff had a self-inflicted gunshot injury to his eye from 1999, which did not qualify as urgent

6  care or life threatening. Dr. Aranas concluded that Plaintiff had been receiving care for this eye

7  throughout the grievance process, and had seen another eye specialist since his last grievance,

8  and there was no mention of surgery. He noted that Plaintiff was ordered for a follow up with the

9  eye clinic in one year. (ECF No. 75-5 at 5.)

10    **2. Complaint and First Amended Complaint**

11    Plaintiff filed his original complaint in this action on February 2, 2017. (ECF No. 1-1.)

12  He filed his first amended complaint (FAC) on February 27, 2018. (ECF No. 5.)

13    **3. Grievance 2006-30-85081**

14    In June of 2019, Plaintiff filed another grievance, stating: He had a disability that NDOC

15  and the Utilization Review Panel (URP) refused to take care of, explaining that he is legally

16  blind in his right eye due to a cataract and was requesting a reasonable accommodation for his

17  disability by having it properly treated with cataract and eye realignment surgery. He noted that

18  Dr. Fischer had recommended he see a specialist three years prior, and that still had not occurred.

19  He also discussed that an NDOC eye doctor who saw him in 2003 or 2004 recommended surgery

20  that was approved, but before it could take place he was transferred out of NDOC during his re-

21  trial. When he returned to NDOC he was refused surgery, and was told that the URP deemed in

22  cosmetic and the URP had a "one eye" rule. He claimed that every eye doctor he had seen except

23  for one said he needed surgery, and NDOC had refused to submit him for surgery. He described

the remedy sought by this grievance as a request that a reasonable accommodation be made under the ADA for his having his cataract removed and his eye realigned so that he could see again out of both eyes. (ECF No. 75-3 at 2-4; ECF No. 92-8 at 2-4.)

K. McCullah denied the informal level grievance on July 2, 2019, advising Plaintiff that his corrected visual acuity would need to be 20/60 in both eyes with current refraction to be considered for cataract surgery. Plaintiff's corrected vision was 20/25; therefore, he did not qualify for surgery. She also advised that any corrective surgery would need to be approved by the URP. She told him that it had been over a year since he had been seen by an eye doctor, and if he wished to be re-examined to submit a kite to be seen. (ECF No. 75-3 at 6.)

Plaintiff submitted a first level grievance on July 7, 2019, stating that he had continuously been denied a reasonable accommodation for his serious disability due to NDOC's and the URP's policies such as the one-eye policy, the cosmetic surgery policy, and the visual acuity policy. He claimed that because of the 20-year delay in treating him, he may have suffered irreversible damage. (ECF No. 75-3 at 8-10.)

Plaintiff apparently filed a second level grievance, but only the response to the second level grievance is included. The response is from Warden Shreckengost. He advised Plaintiff that the grievance was a duplicate of grievance 2006-30-19027. He told Plaintiff that under AR 740, it is an abuse of the grievance procedure when an inmate files a grievance that contains specific claims or incidents previously filed by the same inmate. Plaintiff was advised that his issue would be addressed on grievance 2006-30-19027. (ECF No. 75-3 at 12.)

**4. Disciplinary Proceeding**

Plaintiff received a notice of charges for abuse of the grievance process for submitting grievance 2006-30-85081, which the prison considered a duplicate of grievance 2006-30-19027.

A disciplinary hearing was held on September 6, 2019. Plaintiff claimed the second grievance was not a duplicate, but was filed to assert an ADA claim that his counsel instructed him to file. Plaintiff was found guilty and sentenced to 15-days loss of canteen privileges. (ECF No. 75-3 at 14, 16; ECF No. 92-9 at 2.)

### 5. Second and Third Amended Complaints

On November 13, 2019, the court granted Plaintiff's motion for leave to file a Second Amended Complaint (SAC). (ECF Nos. 34, 35.) On July 22, 2020, the court granted Plaintiff's motion for leave to amend to add the ADA retaliation claim, and the TAC was filed. (ECF No. 70 at 10; ECF No. 71.)

### 6. AR 740

AR 740 is NDOC's inmate grievance procedure. When Plaintiff filed his second grievance regarding the ADA claim, AR 740 provided that its purpose was to set forth the requirements and procedures of the administrative process inmates utilize to resolve grievances and claims, including civil rights claims. (ECF No. 92-11 at 2.) Inmates are required to file an informal, first and second level grievance to complete the grievance process. (*Id*. at 10-15.) AR 740 also discusses conduct that is considered an abuse of the grievance procedure, which will result in a grievance not being accepted and for which disciplinary action may be taken. (*Id*. at 6-7.) This includes filing a grievance that contains specific claims or incidents previously filed by the same inmate. (*Id*. at 7.)

### 7. AR 658

AR 658 is titled "Reasonable Accommodation for Inmates with Disabilities." (ECF No. 92-10 at 2.) The regulation states that its purpose is to ensure NDOC is compliant with Titles I, II and III of the ADA, which gives protections to individuals with disabilities in public

accommodations, employment, transportation, State and local government services, and telecommunications. (*Id*.) It designates the associate warden for programs at each facility as the ADA coordinator. (*Id*. at 4.) The regulation establishes procedures to provide accommodations for qualified disabilities, and confirms that reasonable accommodations shall be made to facility assignments, programs, activities, and services to permit participation by a qualified inmate with a disability. (*Id*. at 5.)

The regulation goes on to provide that NDOC will make reasonable efforts to identify inmates *during the intake process* who may have a disability, though additional assessments may be done by healthcare staff who notice a perceived disability, receive a request by an inmate for review, or receive a referral from NDOC staff for an evaluation. If a practitioner is unable to determine if the inmate qualifies under the ADA, the practitioner is responsible for submitting a request to the URP for a consult by an outside specialist to determine the level of disability, and then the inmate will be seen by a committee to determine the appropriate accommodations. (*Id*. at 6.) The regulation states that an inmate with a disability who believes he is not being reasonably accommodated will submit a grievance with a written request for accommodation, in compliance with AR 740, including the specific disability being claimed as well as the specific accommodation or service the inmate seeks. (*Id*. at 7.) The medical director is required to notify the inmate in writing of the final determination within 45 days. (*Id*.)

The regulation goes on to provide that an inmate seeking accommodation for a possible qualifying disability which was not evaluated or identified during the intake process shall submit an inmate disability accommodation request form (DOC 2668) to the health services administrator, describing the specific disability(ies), and the specific accommodation and/or action the inmate wishes to be taken to accommodate the alleged disability. (*Id*. at 8.) The health

services administrator is required to review the form and evaluate whether the inmate is disabled, and arrange for a clinical evaluation to validate the disability/accommodation request. (*Id*.) Then, the form is forwarded to the ADA coordinator to determine what accommodations would be effective and reasonable. (*Id*. at 9.)

**B. Retaliation under the ADA**

The anti-retaliation provision of Title II of the ADA states:

> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

28 C.F.R. 35.134.

The Ninth Circuit applies the Title VII burden-shifting standard established in *McDonnell Douglas Corp. v. Green,* 411 S.S. 792 (1973), to retaliation claims brought under Title II of the ADA. *T.B. ex rel. Brenneise v. San Diego Unified School Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015).  Under that standard, to succeed on a retaliation claim, the Plaintiff must demonstrate: "(a) that he or she was engaged in protected activity, (b) that he or she suffered an adverse action, and (c) that there was a causal link between the two." *Id*. at 473 (citation and quotation marks omitted).

The "more stringent" "but-for" causation standard articulated in *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338 (2013) (and not the motivating factor causal standard) applies to retaliation claims under Title I and II of the ADA. *Id.* In other words,

12

1 | the plaintiff must demonstrate that "his or her protected activity was a but-for cause of the

2 | alleged adverse action by the [defendant]." *Id*. at 362.

3 | **C. Analysis**

4 |      Here, there is no doubt that Plaintiff was engaged in protected activity in filing a

5 | grievance to attempt to exhaust his claim under the ADA. Nor is it disputed that Plaintiff

6 | suffered an adverse action when he was disciplined in connection with filing the grievance.

7 | There remains a factual dispute, however, as to whether the protected activity (filing a grievance

8 | in an attempt to exhaust administrative remedies for the ADA claim) was the but-for cause of the

9 | disciplinary action.

10 |      Plaintiff is correct that the PLRA provides that "[n]o action shall be brought with respect

11 | to prison conditions under section 1983 of this title, *or any other Federal law*, by a prisoner

12 | confined in any jail, prison, or other correctional facility until such administrative remedies as

13 | are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Plaintiff claims that he was

14 | improperly disciplined for attempting to exhaust his administrative remedies as to the ADA

15 | claim, as the PLRA requires.

16 |      NDOC argues, however, that Plaintiff did not need to file another grievance in order to

17 | exhaust his administrative remedies as to the ADA claim, and AR 740 permits a prison official to

18 | discipline an inmate who raises the same issue in multiple grievances.

19 |      In *Griffin v. Arpaio,* 557 F.3d 1117 (9th Cir. 2009), the inmate filled out the grievance

20 | forms through all levels that the prison required. He did not state that prison officials were

21 | deliberately indifferent to his serious medical needs, and the defendants argued that he did not

22 | properly exhaust his administrative remedies because his grievance was not factually sufficient.

23 | 557 F.3d at 1119-20. *Griffin* pointed out that in *Jones v. Bock*, 549 U.S. at 218, the Supreme

13

Court said that it is the prison's grievance process, and not the PLRA, that defines how detailed a grievance must be to exhaust administrative remedies. *Griffin* held that when the prison's grievance procedures offer little guidance as to the level of specific required, like NDOC's process here, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* The grievance "*need not include legal terminology or legal theories*" because its "primary purpose … is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.* at 1120 (emphasis added).

Therefore, under *Griffin,* it is plausible that Plaintiff could have amended his lawsuit to add the ADA claim without filing a separate grievance, particularly when his request in both grievances was substantially the same: that he be allowed to see a specialist and be given treatment (*i.e.,* surgery) for his right eye. Now, that leaves open the possibility that Plaintiff and his counsel likely considered when Plaintiff decided to file a second grievance for the ADA claim: that NDOC would determine the first grievance did not put NDOC on notice that Plaintiff was seeking modification of its policies under the ADA, and then NDOC would have moved for summary judgment based on failure to exhaust administrative remedies as to the ADA claim. In the court's experience in these cases, that may have even been a very real possibility. The fact remains, however, that under *Griffin*, it appears Plaintiff should not have been required to file a second grievance to exhaust the ADA claim, and AR 740 does say that an inmate can be disciplined for raising the same issue in multiple grievances. Therefore, there is a dispute of fact as to whether Plaintiff was disciplined for attempting to exercise his right to exhaust his administrative remedies, or whether he was disciplined for including the same issue in multiple grievances, which is an abuse of the grievance process under AR 740.

NDOC also argues Plaintiff was not required to exhaust administrative remedies in the first place with respect to the ADA claim, and therefore, Plaintiff did not need to file a second grievance. NDOC relies on *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056 (9th Cir. 2007). Interestingly, Plaintiff also relies on *O'Guinn* for the proposition that he was required to exhaust administrative remedies as to the ADA claim.

NDOC has cherry-picked language out of the *O'Guinn* decision stating that the ADA does not itself contain an exhaustion requirement to support NDOC's argument that Plaintiff was not required to exhaust his ADA claim, without discussing the context of the court's statement or the fact that *O'Guinn* went on to hold that the PLRA nevertheless requires exhaustion of an ADA claim.

The Ninth Circuit specifically concluded that even though Plaintiff pleaded claims under the ADA and the Rehabilitation Act (RA) and not section 1983, "the PLRA requires administrative exhaustion of ADA and [RA] claims." *Id*. at 1059-60. The court noted that the plain language of the PLRA, which says that no action shall be brought under section 1983 "*or any other Federal law,*" requires exhaustion before bringing a claim under the ADA, which is a federal law. *Id*. at 1061. The court did discuss that outside the PLRA context, there is no exhaustion requirement for claims brought under Title II of the ADA. *Id*. (citations omitted). The court went on to state, however, that while the ADA itself does not have an exhaustion provision, it would defeat congressional intent "if prisoners were able to bring federal suits directly in district court whenever a federal statute lacked an exhaustion provision." *Id*. Therefore, the Ninth Circuit held that the PLRA "require[es] prisoners to exhaust prison administrative remedies for claims under Title II of the ADA and the [RA], notwithstanding the absence of a federal administrative exhaustion requirement in these statutes." *Id*. at 1061-62. It is clear then, that an

incarcerated plaintiff is required to exhaust administrative remedies before bringing an ADA claim. The issue here, as discussed above, is whether Plaintiff was required to bring a separate grievance to exhaust his ADA claim under AR 740, and whether in considering Plaintiff's second grievance as duplicative, NDOC was acting in conformity with AR 740 or was retaliating against Plaintiff for exercising his right to exhaust his remedies.

NDOC's last argument is that Plaintiff did not properly request an accommodation under NDOC's AR 658. This argument does not go to whether NDOC retaliated against Plaintiff under Title II of the ADA, but is a potential defense to Plaintiff's Title II ADA discrimination claim itself, and will be discussed further in the report and recommendation on Plaintiff's second motion for partial summary judgment.

Finally, the court will address the issue of the trial in this matter. The Ninth Circuit has held that "ADA retaliation claims are redressable only by equitable relief, [and] no jury trial is available." *Alvarado v. Cajun Operating Co.*, 588 f.3d 1261, 1270 (9th Cir. 2009) (citation omitted). Even if a jury trial is not permitted, that does not mean that the court resolves disputed factual issues on summary judgment. Instead, if there are disputed issues of material fact, they are resolved in a bench trial. It is only when there are no disputed issues of material fact that the moving party may be entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, there is a dispute as to the reason for Plaintiff's discipline; therefore, summary judgment is not appropriate as to this claim, and the Title II ADA retaliation claim should proceed to a bench trial.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for partial summary judgment with respect to his retaliation claim under Title II of the Americans with Disabilities Act (ADA) (ECF No. 75), and this claim should proceed to a bench trial.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: February 5, 2021

William G. Cobb
United States Magistrate Judge

17