1

2

3                          UNITED STATES DISTRICT COURT

4                               DISTRICT OF NEVADA

5                                     * * *

6     CLIFFORD W. MILLER,                      Case No. 3:17-cv-00068-MMD-WGC

7                            Plaintiff,                    ORDER
         v.
8
      ROMEO ARANAS, *et al.*,
9
                            Defendants.
10

11    **I.    SUMMARY**

12          Plaintiff Clifford Miller, currently incarcerated and in the custody of the Nevada

13    Department of Corrections ("NDOC"), brings claims against Defendants the NDOC for

14    violations of Title II of the Americans with Disability Act ("ADA") and Dr. Romeo Aranas

15    under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth Amendment rights. (ECF No. 71

16    ("TAC").) Before the Court are two Reports and Recommendations (ECF Nos. 99, 100

17    ("R&Rs")) of United States Magistrate Judge William G. Cobb. The R&Rs recommend the

18    Court deny Plaintiff's partial summary judgment motions (ECF Nos. 75, 76 ("Motions")).

19    Plaintiff timely filed his objections (ECF Nos. 101, 103 ("Objections")) to the R&Rs.[1]

20    Because the Court agrees with Judge Cobb and as further explained below, the Court

21    overrules Plaintiff's Objections and will adopt the R&Rs in full.

22    **II.   BACKGROUND**

23          The Court incorporates by reference Judge Cobb's recitation of the factual

24    background provided in the R&Rs, which the Court adopts here. (ECF Nos. 99 at 2-4, 7-

25    12; 100 at 2-3, 6-14.)

26

27

28
      ─────────────────────────
              [1]Defendants filed corresponding responses (ECF Nos. 106, 108) to the Objections.

III.   **LEGAL STANDARD**

      **A.      Review of the Magistrate Judge's Recommendations**

      This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* Because of Plaintiff's Objections to the R&Rs, the Court has undertaken a *de novo* review.

      **B.      Summary Judgment**

      "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

      The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once

1    the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting

2    the motion to "set forth specific facts showing that there is a genuine issue for trial."

3    *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings

4    but must produce specific evidence, through affidavits or admissible discovery material, to

5    show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.

6    1991), and "must do more than simply show that there is some metaphysical doubt as to

7    the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting

8    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere

9    existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"

10   *Anderson*, 477 U.S. at 252.

11   **IV.    DISCUSSION**

12   Following a *de novo* review of the R&Rs, relevant briefs, and other records in this

13   case, the Court finds good cause to accept and adopt Judge Cobb's R&Rs. The Court will

14   first address Plaintiff's Eighth Amendment deliberate indifference arguments, then will turn

15   to his ADA discrimination and retaliation claims.

16        **A.    Eighth Amendment Deliberate Indifference**

17   Judge Cobb recommends that Plaintiff's motion for partial summary judgment (ECF

18   No. 76) be denied as there remains a genuine dispute of material fact of whether

19   Defendant Dr. Romeo Aranas was deliberately indifferent to Plaintiff's serious medical

20   needs in violation of the Eighth Amendment. (ECF No. 100 at 20-26.) The primary dispute

21   of fact is whether Plaintiff was denied surgery because of the NDOC's policies, or because

22   it was not medically necessary or urgent. (*Id.* at 23.) There are also disputes as to whether

23   Plaintiff suffered further injury from delayed surgery and whether the NDOC has in effect

24   a "one good eye" policy. (*Id.* at 24-25.) Plaintiff's objection merely reiterates that Dr. Aranas

25   could not have relied on Dr. Seljestad's opinion because Dr. Aranas "rubberstamp[ed]

26   grievance denials," thus evidencing deliberate indifference. (ECF No. 103 at 21-23.)

27   Plaintiff further argues that forcing him to wait 20 years for cataract surgery is "patently

28   unreasonable" in light of his serious medical condition. (*Id.* at 23-24.) While the Court is

1  sympathetic to Plaintiff's situation, the Court nevertheless agrees with Judge Cobb.

2  The Eighth Amendment prohibits the imposition of cruel and unusual punishment

3  and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and

4  decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth

5  Amendment when he or she acts with "deliberate indifference" to the serious medical

6  needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth

7  Amendment violation, a plaintiff must satisfy both an objective standard—that the

8  deprivation was serious enough to constitute cruel and unusual punishment—and a

9  subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

10  Cir. 2012).

11  Here, the dispute between the parties is over the deliberate indifference prong. To

12  satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or

13  failure to respond to a prisoner's pain or possible medical need and (b) harm caused by

14  the indifference." *Id.* "Indifference may appear when prison officials deny, delay or

15  intentionally interfere with medical treatment, or it may be shown by the way in which

16  prison physicians provide medical care." *Id.* (internal quotations omitted). When an inmate

17  alleges delay of medical treatment evinces deliberate indifference, the inmate must show

18  the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d

19  404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient

20  to state a claim of deliberate medical indifference"). Additionally, "[a] difference of opinion

21  between a prisoner-patient and prison medical authorities regarding treatment does not

22  give rise to a § 1983 claim*." Franklin v. Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th

23  Cir. 1981).

24  The NDOC's Medical Directive ("MD") 123.03 states in part the following:

25  
26      1.  Inmate patients with a cataract that causes visual impairment incompatible with the ability to perform the required tasks of daily living in their current living environment may be considered for removal of such cataract.

27  
28      2.  There must be documentation of a best corrected visual acuity of less than 20/60 in both eyes with current (less than 6 months) refraction.

1   (ECF No. 76-4 at 6.)[2] Judge Cobb prudently noted that MD 123.03 is essentially a "one

2   good eye" policy because an inmate is not eligible for cataract surgery if he or she has a

3   normal (or above 20/60) visual acuity in one eye. (ECF No. 100 at 24-25.) The Ninth Circuit

4   Court of Appeals has previously found a "blanket, categorial denial of medically indicated

5   surgery solely on the basis of an administrative policy that 'one eye is good enough for

6   prison inmates' is the paradigm of deliberate indifference." *Colwell v. Bannister*, 763 F.3d

7   1060, 1063 (9th Cir. 2014). But Plaintiff has not presented any concrete evidence that Dr.

8   Aranas excluded him from cataract surgery because of, or "solely" because of, MD 123.03.

9       But neither is there sufficient evidence in the record, particularly when viewed in

10  the light most favorable to the nonmoving party Dr. Aranas, to conclude with certainty that

11  Dr. Aranas denied surgery to Plaintiff because it was not medically necessary or urgent.

12  On November 10, 2016, Dr. Aranas issued a response denying Plaintiff's second-level

13  grievance requesting treatment. (ECF No. 93-5.) He explicitly stated that he had reviewed

14  Plaintiff's charts, as well as the first-and second-level grievances. (*Id.*) Dr. Aranas's

15  response also indicated that Plaintiff had multiple visits with providers and specialists,

16  Plaintiff's 1999 gunshot injury did not qualify as urgent care or life threatening, and Plaintiff

17  had recently seen an eye specialist who made no mention of surgery. (*Id.*) Dr. Aranas

18  further ordered Plaintiff for a follow-up at the eye clinic in one year. (*Id.*)

19      At that time, evidence existed that Plaintiff had a cataract in his right eye and

20  removal was recommended with intraocular lens to the right eye. (ECF Nos. 76-6 at 9; 76-

21  4 at 20.) Medical progress notes dated October 4, 2002 mentioned Plaintiff had a severe

22  right lens cataract and recommended consult and cataract surgery. (ECF No. 76-5 at 10.)

23  A letter dated June 2, 2016 from Dr. Fischer stated Plaintiff needed a strabismus surgery

24  to correct the problem with his right eye and recommend Dr. Hong for the procedure. (ECF

25  No. 93-6.) There were also medical notes from March 11, 2002 stating Plaintiff was

26

27      [2]The Court notes that the copy of MD 123 submitted by Plaintiff was effective March
    2019. This version and the language cited may not have been the exact language relevant
28  from the time Plaintiff began the grievance process up until this version of MD 123 became
    effective.

1    "[a]dvised that probably nothing can be done"[3] regarding the damaged right eye. (ECF No.

2    76-4 at 22.) Conversely, a February 25, 2016 report by Dr. Seljestad, an optometrist,

3    appears to state that Plaintiff's traumatic cataract and second gunshot wound to the eye

4    was "stable." (ECF No. 93-1.) Plaintiff disclosed via an informal grievance in March 2016

5    that Dr. Seljestad told Plaintiff that he would never see out of his eye again. (*See* ECF No.

6    93-2 at 4.)

7         Nearly three years after Dr. Aranas's November 10, 2016 grievance response

8    denying Plaintiff's treatment request and more than three years after Dr. Fischer's June 2,

9    2016 recommendation, Plaintiff eventually saw Dr. Hong on September 25, 2019. (ECF

10   No. 93-7.) A fax from Dr. Hong dated October 28, 2019 stated: "Cataracts in both eyes,

11   right worse than left. *Not* urgent; elective surgery." (ECF No. 93-8 at 2 (emphasis in

12   original).) In the end, Plaintiff received cataract surgery on June 30, 2020, which was

13   unsuccessful in restoring Plaintiff's vision. (ECF No. 93-9 at 7.)

14        Based on the evidence provided, there is a dispute as to whether Plaintiff's surgery

15   was medically necessary or urgent. Whether the 20 years that Plaintiff had to wait for his

16   surgery was "patently unreasonable" in light of his serious medical condition depends in

17   part on resolving that dispute. It is worth mentioning that Dr. Aranas—the sole Defendant

18   in this claim—became the NDOC's medical director in 2013. Nevertheless, it is evident

19   that several years have passed from the time Plaintiff sought eye surgery to when he

20   ultimately received it. Because a dispute remains, the Court cannot find that Dr. Aranas

21   was deliberately indifference because Plaintiff waited "20 years" for surgery. A rational

22   trier of fact could reasonably find that Dr. Aranas did not act with deliberate indifference.

23        As to Plaintiff's argument that Dr. Aranas was deliberately indifferent because he

24   "merely signs 'prepared responses' by 'grievance responders'" (ECF No. 103 at 21 (citing

25   Dr. Aranas's interrogatory responses at ECF No. 76-3 at 10)) to conclude that he did not

26

27        [3]The Court notes that it is unclear, given the nature of this case, whether "probably
     nothing can be done" is because it is medically impossible to correct the damaged eye or
28   because of specific policies and procedures present an impossibility for Plaintiff to receive
     surgery to correct the damaged eye.

1   rely on Dr. Seljestad's opinion in denying Plaintiff surgery, the Court does not find Plaintiff's

2   argument convincing. The Court reviewed *de novo* Dr. Aranas's interrogatory responses

3   (ECF No. 76-3), which was cited to infer that Dr. Aranas rubberstamped grievance denials,

4   thereby evidencing deliberate indifference. In the interrogatories, Dr. Aranas was asked to

5   explain if his denial was based on Plaintiff having a self-inflicted gunshot injury. (*Id.* at 10.)

6   Dr. Aranas stated that he "signs the prepared responses by designated grievance

7   responders" and that "the denial had nothing to do with Plaintiff's self-inflicted gunshot

8   injury." (*Id.* (internal quotes omitted).) The Court does not infer from Dr. Arana's response

9   what Plaintiff posits with his argument, which is that Dr. Aranas was deliberately indifferent.

10          The Court agrees with Judge Cobb that there is a dispute of material fact whether

11   Dr. Aranas's denial of—or his delay in allowing—Plaintiff's requested surgery constitutes

12   "deliberate indifference" to Plaintiff's serious medical needs in light of medical evidence,

13   and whether said delay caused Plaintiff further injury. Plaintiff therefore has not shown he

14   is entitled to summary judgment as there is a genuine issue as to material fact. *See*

15   *Celotex Corp.*, 477 U.S. at 322. Accordingly, the Court adopts Judge Cobb's

16   recommendation with respect to Plaintiff's Eighth Amendment claim of deliberate

17   indifference and denies Plaintiff's motion for partial summary judgment.

18          **B.     ADA Discrimination**

19          Judge Cobb recommends that Plaintiff's motion for partial summary judgment (ECF

20   No. 76) be denied because there is an obvious dispute of material fact regarding the basis

21   for Plaintiff's surgery denial, as explained above, which implicates whether he has an

22   actionable Title II ADA discrimination claim. (ECF No. 100 at 26-35.) Similar to the Court's

23   explanation of Plaintiff's Eighth Amendment deliberate indifference claim, it remains

24   unclear whether Plaintiff was denied surgery due to intentional discrimination of monocular

25   blindness disability—a violation of the ADA—or due to the surgery not medically

26   necessary, urgent, or helpful to Plaintiff. (*Id.* at 33.) Plaintiff objects and argues that he

27   does not need to show he was denied surgery if he was subjected to discrimination, which

28

1    includes a failure to reasonably accommodate his disability. (ECF No. 103 at 13.) The

2    Court, however, is not convinced here by Plaintiff's argument.

3            Title II of the ADA provides that "no qualified individual with a disability shall, by

4    reason of such disability, be excluded from participation in or be denied the benefits of the

5    services, programs, or activities of a public entity, or be subjected to discrimination by any

6    such entity." 42 U.S.C. § 12132. Title II includes "an affirmative obligation for public entities

7    to make benefits, services, and programs accessible to people with disabilities." *Updike v.*

8    *Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017). "To prove that a public program or

9    service violated Title II of the ADA, a plaintiff must show: (1) he [or she] is a 'qualified

10   individual with a disability' (2) he [or she] was either excluded from participation in or

11   denied the benefits of a public entity's services, programs, or activities, or was otherwise

12   discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

13   discrimination was by reasons of his [or her] disability." *Duvall v. Cty. of Kitsap*, 260 F.3d

14   1124, 1135 (9th Cir. 2001) (citing *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d

15   976, 978 (9th Cir. 1997)). To recover monetary damages, plaintiff must prove intentional

16   discrimination by showing defendant acted with "deliberate indifference." *See id.* at 1138.

17   "Deliberate indifference requires both knowledge that a harm to a federally protected right

18   is substantially likely, and failure to act upon [] the likelihood." *Id.* at 1139 (citation omitted).

19           Here, Plaintiff's argument presumes the existence of a discriminatory basis for

20   surgery denial and ignores the key point in Judge Cobb's analysis which is that Plaintiff

21   has not shown that "the denial of surgery was *because of* his disability." (ECF No. 100 at

22   33 (emphasis added).) It remains arguable that Defendant did not fail to act, but rather

23   determined based on medical evidence that surgery was not medically necessary, urgent,

24   or helpful to Plaintiff. At the summary judgment phase, Plaintiff must show the

25   discrimination—here, failure to reasonably accommodate monocular blindness via

26   surgery—"was by reasons of his disability." *See Duvall*, 260 F.3d at 1135. Plaintiff has not

27   done so and the Court thus agrees with Judge Cobb that Plaintiff is not entitled to summary

28

1    judgment as there remains a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S.

2    at 322. Accordingly, Plaintiff's motion for partial summary judgment is denied.

3          **C.      ADA Retaliation**

4          Judge Cobb recommends that Plaintiff's motion for partial summary judgment (ECF

5    No. 75) on the ADA retaliation claim be denied and that the claim proceed to a bench trial.

6    (ECF No. 99 at 7-16.) He found that there is a dispute of fact regarding whether Plaintiff

7    was disciplined by the NDOC for exercising Plaintiff's rights or for abuse of the grievance

8    process under the NDOC's Administrative Regulation ("AR") 740. (*Id.* at 14.) Plaintiff

9    objects by arguing that there are no issues of fact in dispute. (ECF No. 101 at 4-5.) More

10   specifically, Plaintiff recites undisputed facts and asserts that the filing of his ADA

11   grievance was the "but-for cause" of the NDOC's disciplinary action against Plaintiff. (*Id.*

12   at 7.) Plaintiff points out that the "NDOC does not deny that had [Plaintiff] not filed an ADA

13   grievance he would not have been disciplined." (*Id.* at 7, n.18, n.19.) The Court, however,

14   finds that Plaintiff has not met his burden of establishing that the NDOC's reasoning for

15   the adverse action was a pretext for ADA discrimination.

16         The Ninth Circuit Court of Appeals applies the *McDonnell Douglas* burden-shifting

17   standard to analyze ADA retaliation claims asserted based on circumstantial evidence.

18   *See, e.g.*, *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (applying

19   *McDonnell Douglas* to a motion for summary judgment). Under *McDonnell Douglas Corp.*

20   *v. Green*, a plaintiff must first establish a prima facie case of retaliation as set forth below.

21   411 U.S. 792, 802 (1973). If the plaintiff is successful, the burden shifts to the defendant

22   to successfully articulate a legitimate, non-retaliatory reason for their actions, which then

23   shifts back to the plaintiff to show the defendant's reason is a pretext or cover for its true

24   retaliatory motive. *See id. at* 802-05.

25         A plaintiff bringing an Article II ADA retaliation claim must show "(a) that he or she

26   was engaged in a protected activity, (b) that he or she suffered an adverse action, and (c)

27   that there was a *causal link* between the two." *Emeldi v. Univ. of Or.*, 673 F.3d 1218, 1223

28   (9th Cir. 2012) (emphasis added) (citing *Brown v. City of Tucson*, 336 F.3d. 1181, 1192

1   (9th Cir. 2003)); *see also T.B.*, 806 F.3d at 473 (holding that *McDonnell Douglas* standard

2   applies to Article II ADA retaliation claims). The "causal link" between the two consist of a

3   more stringent test of but-for causation. *Id.* (citing *Uni. of Tex. Sw. Med. Ctr. v. Nassar*,

4   570 U.S. 338, 352 (2013)).

5          Here, Plaintiff has established a prima facie case of retaliation. Plaintiff engaged in

6   a protective activity by filing a second grievance in an attempt to exhaust his ADA claim.

7   (ECF No. 75-2 at 10-14.) Plaintiff suffered an adverse action when the NDOC disciplined

8   Plaintiff with 15-days loss of canteen privileges for filing the second grievance. (ECF No.

9   92-9 at 3.) Between the time Plaintiff filed his first grievance in 2016 to his second

10  grievance in 2019, Plaintiff also filed this federal action against the NDOC. (*See* ECF No.

11  1-1.) The Court finds that there is a causal link between the protective activity and the

12  adverse action. Plaintiff has thus established a prima facie case and the burden shifts to

13  the NDOC to articulate a legitimate reason for the adverse action.

14         The NDOC denies retaliation and contends the adverse action was proper because

15  Plaintiff was abusing the grievance process by filing a duplicate grievance. (ECF No. 92

16  at 8-9.) According to the NDOC, Plaintiff violated AR 740.04 because his "second

17  grievance arouse out of the same claim and requested the same remedy." (*Id.* at 8.) This

18  is in violation of section 2.B of AR 740.04, which states that "[s]pecific claims or incidents

19  previous filed by the same inmate" is considered an abuse of the inmate grievance

20  procedure. (*Id.* (citing AR 740.04 2.B.)) Abuse under this administrative regulation results

21  in "the grievance being not accepted and disciplinary action may be taken" by the NDOC.[4]

22  *See* AR 740.04 1. The Court finds that the NDOC has articulated a non-retaliatory reason

23

24         [4]The Court notes that AR 740.04 1 states that disciplinary action *may* be taken by
    the NDOC. The Notice of Disciplinary Charges dated July 22, 2019 states, "[Plaintiff] is an
25  experienced grievance writer who well understands what he is doing by filing duplicate,
    frivolous grievances. He understands that abusing the grievance process can lead to
26  disciplinary action." (ECF No. 75-3 at 14.) A summary of a July 30, 2019 hearing regarding
    Plaintiff's alleged violation includes a preliminary statement by Plaintiff that states in part,
27  "This is not a duplicate claim, this is america's [*sic*] disability claim that my perosn [*sic*] that
    I am requesting as counsel is Terry Keleer Cooper [*sic*] who instructed me to file for my
28  handicap." (ECF No. 92-9 at 5.) Plaintiff was nevertheless found guilty of abuse of the
    grievance process and given 15 days canteen loss. (*Id.* at 3.)

1  for its actions, and therefore the burden shifts back to Plaintiff to evidence a pretext or

2  cover for its true retaliatory motive.

3        Plaintiff argues that, "had [Plaintiff] not filed an ADA grievance he would not have

4  been disciplined," and thus "[t]he ADA grievance was the proximate cause and the cause

5  in fact of [Plaintiff's] protective activity; but for [Plaintiff's] filing of his ADA grievance he

6  would not have been disciplined." (ECF No. 101 at 3.) Moreover, Plaintiff argues that the

7  NDOC's administrative regulations—particularly AR 740—makes the grievance process

8  nearly impossible for inmates and renders Plaintiff "hopelessly doomed whichever way he

9  went." (*Id.* at 17.) While the Court is sympathetic to the "catch-22" situation Plaintiff

10  arguably finds himself, in viewing the facts and drawing all inferences most favorable to

11  the nonmoving party, the Court finds that Plaintiff has not met his burden to show AR 740

12  is a pretext, or that application of AR 740 to discipline Plaintiff is a pretext, for the NDOC's

13  retaliatory motive. *See McDonnell Douglas*, 411 U.S. at 804 (stating that Plaintiff must

14  show the reason provided by Defendant was pretext for an impermissible reason). The

15  Court therefore agrees with Judge Cobb that Plaintiff's motion for partial summary

16  judgment should be denied with respect to Plaintiff's ADA retaliation claim and will adopt

17  his recommendation. This claim will proceed to a bench trial.

18  **V.    CONCLUSION**

19        The Court notes that the parties made several arguments and cited to several cases

20  not discussed above. The Court has reviewed these arguments and cases and determines

21  that they do not warrant discussion as they do not affect the outcome of the Motions before

22  the Court.

23        It is therefore ordered that the Reports and Recommendations of Magistrate Judge

24  William G. Cobb (ECF Nos. 99, 100) are accepted and adopted in full.

25        It is further ordered that Plaintiff's motions for partial summary judgment (ECF Nos.

26  75, 76) are denied.

27        DATED THIS 17th Day of March 2021.

28  MIRANDA M. DU
    CHIEF UNITED STATES DISTRICT JUDGE

11