UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CLIFFORD W. MILLER,<br><br>                Plaintiff,<br>     v.<br>ROMEO ARANAS, *et al.*,<br><br>                Defendants. | Case No. 3:17-cv-00068-MMD-CSD<br><br>ORDER |

**I.   SUMMARY**

This action stems from the denial of cataract surgery to an inmate with monocular blindness. (ECF No. 71.) The inmate, Plaintiff Clifford Miller, brought claims against Defendants the Nevada Department of Corrections ("NDOC") for violations of Title II of the Americans with Disabilities Act ("ADA") and against Dr. Romeo Aranas under 42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment rights. (*Id.*) In March 2022, the parties entered into a settlement agreement, and the Court subsequently dismissed the action. (ECF Nos. 137, 138.) Before the Court is Plaintiff's motion for attorneys' fees and costs. (ECF No. 139, errata 140-1 ("Motion").)[1] Because the limit on attorneys' fees under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(2) ("PLRA's fee limit"), does not apply—and as further explained below—the Court will grant the Motion in part and deny in part. The Court will award Plaintiff a total of $562,535.62 in attorneys' fees and costs.

**II.   BACKGROUND**

The following facts are undisputed. Plaintiff is an inmate in the custody of the NDOC and originally filed a complaint under 42 U.S.C. § 1983 as a *pro se* litigant, alleging

---

[1]The Court notes that Plaintiff attached several exhibits and declarations in support of his Motion. (*See* ECF Nos. 139-1–139-32.) Defendants filed a response and Plaintiff filed a reply to the Motion. (ECF Nos. 146, 147.)

that he was being denied cataract surgery because he was an inmate. (ECF No. 4.) The Court screened his complaint and dismissed his claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment and his claims of equal protection and due process in violation of the Fourteenth Amendment. (ECF No. 3.) Plaintiff subsequently filed a first amended complaint ("FAC") and again alleged violations of the Eighth and Fourteenth Amendments. (ECF No. 5.) The Court screened the FAC and only allowed Plaintiff's Eighth Amendment claim to proceed. (ECF No. 6.)

In August 2019, Plaintiff secured attorney Terri Keyser-Cooper as counsel, and on August 27, 2019, counsel entered a notice of appearance. (ECF No. 26.) Plaintiff, having secured counsel, proceeded to file a second amended complaint ("SAC") that included a claim that the NDOC had violated the ADA. (ECF No. 35 at 11-15.) Plaintiff additionally moved for a preliminary injunction seeking (1) modification of the NDOC's alleged policy rejecting corrective surgery for monocular blindness, and (2) expungement of Plaintiff's disciplinary conviction for filing an ADA grievance. (ECF No. 38 (sealed).) After Plaintiff moved for a preliminary injunction, he eventually received the corrective surgery he had alleged the NDOC previously denied him. (ECF No. 135-1.) In July 2020, Plaintiff filed a third and final amended complaint that included his Eighth Amendment claim against Dr. Aranas and his Title II ADA claims against the NDOC. (ECF No. 71.)

On September 20, 2021, the Court scheduled a bench trial regarding the ADA claims for March 2022, and a jury trial regarding the Eighth Amendment claim for April 2022. (ECF Nos. 125, 126.) In addition to Terri Keyser-Cooper, Plaintiff secured attorneys Diane Vaillancourt and Peter Wetherall as counsel. (ECF Nos. 128, 132.) Days prior to the commencement of the bench trial, the parties entered into a settlement agreement and stipulated to dismiss the case with prejudice. (ECF No. 137.) The settlement agreement provided, in relevant part, the following:

> 1. . . . NDOC will pay to Plaintiff a total of SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500) by check made out to the Law Office of Terri Keyser-Cooper.

> 2. . . . NDOC will cause the discipline imposed upon Plaintiff which is the subjection of his retaliation claim to be retracted, rescinded, stricken from Plaintiff's prison record, and sealed or otherwise deleted so that said discipline can never be disclosed or argued to the Pardon's Board.
>
> 3. NDOC acknowledges and agrees that its internal policies and procedures for dealing with inmates with monocular blindness shall conform to the requirements of *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014). Specifically, NDOC acknowledges and agrees that neither it nor any employee acting on its behalf will exclude inmates with monocular blindness from *consideration* for corrective surgery based solely on a policy requiring an inmate to endure reversible blindness in one eye if he can still see out the other. . . .

(*Id.* at 4-5 (underline removed, emphasis added and in original).) Moreover, under the "Fees and Costs" section, the settlement agreement further provided:

> The NDOC and Plaintiff agree that the payment of $7,500 to Plaintiff provided herein is exclusive of reasonable and verifiable costs and attorneys' fees, with said costs and fees to be determined by the Court upon motion by Plaintiff, to be filed no later than 30 days from the date this Agreement is executed.

(*Id.* at 6.)

On March 29, 2022, Plaintiff filed the instant Motion. (ECF No. 140-1.) Plaintiff's counsel requests $559,397.50 in attorneys' fees. (*Id.* at 29.) This amount was calculated based on 807.75 hours performed by Keyser-Cooper at a rate of $550.00 an hour, 179.2 hours performed by Vaillancourt at $550.00 an hour, and 22.1 hours by Wetherall at $750.00 an hour. (*Id.*) In the reply brief, Plaintiff's counsel requests an additional $5,610.00 an hour for 10.2 hours spent on the case since the Motion was filed. (ECF No. 147 at 7.) Additionally, Plaintiff's counsel also requests a total of $1,948.12 in costs with $1,518.22 being paid to Keyser-Cooper and $429.90 paid to Plaintiff. (ECF No. 140-1 at 29.)

///
///
///
///

3

## III. DISCUSSION

As an initial matter, the parties do not dispute that Plaintiff is the prevailing party. (ECF Nos. 140-1 at 18-19, 146 at 3.) Defendants' response additionally does not appear to oppose the requested amount of $1,948.12 in costs.[2] (*See* ECF No. 146.) Moreover, Defendants notably state that Dr. Aranas "agrees [Plaintiff] is entitled to a reasonable attorney fee [sic]." (*Id.* at 3.) Therefore, the dispute is essentially over whether the PLRA's fee limit caps the amount of attorneys' fees to be awarded to Plaintiff.

As the party seeking attorneys' fees, Plaintiff argues the PLRA's fee limit does not apply in the following instances: (1) the parties settle privately and include an attorneys' fee provision in their settlement agreement, (2) the case involves ADA claims in the prison context, and (3) an inmate brings a § 1983 claim for equitable relief.[3] (ECF No. 140-1 at 19-20.) Because the PLRA's fee limit does not cap attorneys' fees in cases involving ADA claims and thus Plaintiff's second argument proves to be dispositive, the Court will first discuss the PRLA and state the relevant language. The Court will then address the parties' arguments regarding attorneys' fees under the relevant ADA provision and will conclude by determining whether the amount requested by Plaintiff is reasonable.

### A. PLRA

In enacting the PLRA, "Congress meant to discourage the filing of § 1983 claims by prisoners because there were so many unmeritorious cases[.]" *Woods v. Carey*, 722

---

[2]In their response, Defendants do not appear to oppose this amount. (*See* ECF No. 146.) The Court will therefore grant Plaintiff the requested $1,948.12 in costs.

[3]Because Plaintiff's ADA argument proves to be dispositive, the Court need not address the merits of his remaining arguments. However, the Court notes that even if the ADA argument did not prove to be dispositive, in the alternative, Plaintiff's third argument would nevertheless persuade the Court to grant Plaintiff's requested attorneys' fees in light of *Dannenberg v. Valdez*, 338 F.3d 1070, 73-75 (9th Cir. 2003) (holding the PLRA's fee limit does not apply in a § 1983 case when injunctive relief is awarded to an inmate in addition to monetary damages). Here, in addition to $7,500.00 in monetary damages to Plaintiff, the settlement agreement required the NDOC to change its policies and practices to conform to the requirements set forth in *Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014). (ECF No. 137 at 4-5.) Additionally, the settlement agreement required the NDOC to expunge the discipline imposed on Plaintiff for filing an ADA grievance. (*Id.*) The Court is therefore further persuaded that the PLRA's fee limit does not apply in this instance and therefore Plaintiff is entitled to attorneys' fees consistent with *Dannenberg*.

4

F.3d 1177, 1183 (9th Cir. 2013). "Congress, therefore, sought to have frivolous prisoner actions dismissed at an earlier part of the process and enacted disincentives to limiting frivolous claims, such as filing fees and caps on attorney's fees, that would affect a prisoner's decision to file the action in the first place." (*Id.* at 1182 (quotes and citation omitted).) However, Congress did not "intend to discourage the collection of awards in those comparatively few meritorious cases in which the district court had found that the prisoner's constitutional rights had been violated and that the prisoner was entitled to collect damages for that violation." (*Id.*)

To that end, the PLRA provides in relevant part the following:

> (1) In an action brought by a prisoner . . . in which attorney's fees are authorized by section 1988 of this title, such fees shall not be awarded, except to the extent that—
>
> > (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title[.]

42 U.S.C. § 1997e(d)(1)(A). Immediately following, the PLRA further provides limitations on fees:

> (2) Where a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

§ 1997e(d)(2)-(3).[4]

---

[4]The Court notes that Defendants argue the PLRA's cap on hourly rates should limit the attorneys' fees granted. (ECF No. 146 at 4-5.) The Court declines to address this argument further because, as stated below, the Court can award Plaintiff attorneys' fees under the ADA. Moreover, the Ninth Circuit in *Armstrong v. Davis*, 318 F.3d 965, 973-74 (9th Cir. 2003) addressed this same argument regarding an hourly rate limit under the

### B. ADA

Plaintiff cites to *Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2003), to argue the PLRA's fee limit does not apply to inmates with ADA claims. (ECF No. 140-1 at 19-20.) Given his success on the claims, which includes Title II ADA claims, Plaintiff appears to additionally argue that counsel should be awarded full attorneys' fees because his ADA and § 1983 claims substantially overlap. (*Id.*) Defendants appears to counter that Plaintiff is bound by the PLRA's fee limit and thus merely entitled to $11,250.00 in attorneys' fees. (ECF No. 146 at 4.) Defendants appear to further counter that because Plaintiff's ADA claim is similar to his § 1983 claim, and the Court did not decide the ADA claim on the merits, a discretionary increase in awarding attorneys' fees beyond the PLRA's fee limit is unwarranted. (*Id.* at 5-8.) The Court agrees with Plaintiff.

In *Armstrong*, the Ninth Circuit affirmed the district court's decision to award attorney's fees to a class of inmates and parolees with disabilities, who prevailed in their action under the ADA and the Rehabilitation Act of 1973 ("RA"). 318 F.3d 965 (9th Cir. 2003). In doing so, the Ninth Circuit held the PLRA's fee limit did not apply where fees were sought under the ADA and RA.[5] *Id.* at 974. Moreover, the court found that arguments supporting plaintiff's ADA and § 1983 claims "so overlapped" that the district court was within its discretion to conclude that it was not appropriate to apply the PLRA's fee limit. *Id.* at 975. Despite Defendants' response being strikingly silent as to *Armstrong*, the case is particularly analogous here.

In addition to his § 1983 claim, Plaintiff's complaint included a similar ADA claim. (ECF No. 71 at 11-16.) Not only is it undisputed that Plaintiff is the prevailing party, but

---

PLRA and articulating that "[t]he PLRA does not limit the award of attorney's fees to a prevailing plaintiff whose award is authorized under a statute separate from § 1988.").

[5]The relevant ADA attorney's fee provision, 42 U.S.C. § 12205, provides that "the court . . . in its discretion, may allowing the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs[.]" While Plaintiff does not directly cite to this provision in his Motion, the Court construes his reliance on *Armstrong* as arguing that § 12205 is the "independent justification" for seeking full attorneys' fees unencumbered by the PLRA. (ECF No. 140-1 at 19-20.) This reading is further supported by Plaintiff's reference to § 12205 in his reply. (*See* ECF No. 147 at 2.)

1 the terms of the settlement agreement are decisively favorable to Plaintiff. (*See* ECF No.
2 137 at 4-6.) Whether the ADA claim was decided on the merits has lesser relevance than
3 determining the "prevailing party" in an action. *See Barrios v. Cal. Interscholastic Fed'n*,
4 277 F.3d 1128, 1134 (9th Cir. 2002) (holding that a prevailing party in an ADA action, that
5 had entered into a settlement agreement with terms it could enforce against the opposing
6 party, is entitled to fees and costs under § 12205). Additionally, because Plaintiff's ADA
7 claim is "similar" to his § 1983 claim—as Defendants state to their detriment (*see* ECF
8 No. 146 at 5)—the Court finds the claims "so overlapped" that it would present significant
9 challenges to divide verifiable hours spent on each claim. *See Armstrong*, 318 F.3d at
10 974-75 (citation and quotes omitted) (noting the rule that if fee and non-fee claims are
11 intertwined that time spent on claims cannot be divided, fees could be granted for the
12 entire case).

13 Accordingly, the Court will grant attorneys' fees to Plaintiff in full but not in the
14 amount requested, as the amount is not entirely reasonable for the reasons discussed
15 below.

**C.   Reasonable Fees**

17 As the prevailing party, Plaintiff endorses the lodestar method and argues the
18 factors set forth in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67 (9th Cir. 1975), weigh in
19 favor of granting Plaintiff the full amount requested in attorneys' fees.[6] (ECF No. 140-1 at
20 22.) Defendants counter that the *Kerr* factors do not weigh in Plaintiff's favor and that he
21 unreasonably inflates the hourly rates to California rates when calculating fees for
22 Vaillancourt and Wetherall.[7] (ECF No. 146 at 7-8.) The Court agrees with Defendants to

---

[6]Plaintiff specifically argues the following *Kerr* factors weight in his favor: (1) time and labor required, (2) novelty and difficulty of the questions involved, (3) undesirability of the case, (4) amount involved and results obtained, (5) customary fee, and (6) whether fee is fixed or contingent. (ECF No. 140-1 at 22-28.)

[7]In regard to the *Kerr* factors, Defendants counter that (1) time and labor of counsel do not warrant an upward deviation, (2) the issues presented are neither novel or difficult questions of law, (3) representation of Plaintiff did not require three attorneys, (4) Plaintiff's counsel were not precluded from other cases, and (5) counsel's professional relationship is not of the length warranting the lodestar approach. (ECF No. 146 at 8.)

the extent that Wetherall's rates are unreasonable. However, the *Kerr* factors are not so compelling to justify deviating from the lodestar method when calculating fees.

When awarding attorneys' fees under 42 U.S.C. § 12205, the Court adopts the lodestar method, which calculates a base fee by "multiplying the number of hours productively expended by counsel times a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). A district court can properly rely on its own familiarity with the local legal market in determining a reasonable and proper rate. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Plaintiff's counsel provides, and has submitted declarations, that attorney Keyser-Cooper and Vaillancourt's hourly rates are $550.00, and that attorney Wetherall's rate is $750.00. (ECF Nos. 140-1 at 29, 139-11 at 12, 139-21 at 7, 139-27 at 5.) While Keyser-Cooper and Vaillancourt's rates do not cause pause for concern, based on the Court's familiarity with the legal market in northern Nevada, Wetherall's rate causes pause as it is higher than the customary rate for the legal community in this district. *See Ingram*, 647 F.3d at 928. As such, the Court will reduce Wetherall's rate to $550.00 in parity with Keyser-Cooper and Vaillancourt. Moreover, pursuant to LR 54-14, attorneys Keyser-Cooper, Vaillancourt, and Wetherall have submitted time records evidencing total hours each attorney respectively spent litigating this case: 817.95, 179.2, and 22.1 hours.[8] (ECF Nos. 139-12, 139-23, 139-29, 147 at 6-7.) Defendants do not challenge these numbers, or the record provided as being inaccurate. (*See* ECF No. 146.) Applying the lodestar method, Keyser-Cooper is entitled to $449,872.50, Vaillancourt to $98,560.00, and Wetherall to $12,155.00 in attorneys' fees.

As to the *Kerr* factors, the Ninth Circuit has articulated the following factors to be considered when determining the reasonableness of fees: (1) the time and labor required,

---

[8]Keyser-Cooper's total 817.95 hours includes the 807.75 hours provided in the Motion (ECF No. 140-1 at 29) and the 10.2 hours provided in her reply (ECF No. 147 at 7.)

8

(2) the novelty and the difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, (12) and awards in similar cases. *Kerr,* 526 F.2d at 70. While the parties argue the *Kerr* factors are in their favor, *see supra* at p. 7, n.6 & n.7, the Court does not find any of the factors are so compelling to deviate from the lodestar calculation. In this instance, and having reviewed the arguments, the Court finds that multiplying a fair-market rate by the number of hours expended litigating the case yields reasonable attorneys' fees.

Moreover, the Court finds the total amount of attorneys' fees to be awarded—$560,688.50—sufficiently incentivizes attorneys to represent clients in possession of legitimate civil rights claims without excessively enriching counsel. *See Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010) (finding that a reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."). This is all the more important when considering how few meritorious cases result in favorable outcomes for inmates alleging violations of their rights. *See Woods,* 722 F.3d at 1182, n.5 (noting that "out of the 55,376 prisoner suits that ended in 2000, only 10.5% went to trial, and of those, a total of 77 resulted in victories for prisoners."). Accordingly, for the reasons stated herein and having considered the *Kerr* factors, the Court declines to modify the lodestar amount.

In sum, Plaintiff's Motion is granted in part and denied in part. The Court awards Plaintiff a total of $562,535.62 in attorneys' fees and costs: $449,872.50 and $1,518.22 for Keyser-Cooper; $98,560.00 for Vaillancourt; $12,155.00 for Wetherall; and $429.90 for Plaintiff.

///

///

**IV.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Plaintiff Clifford Miller's motion for attorneys' fees and costs (ECF No. 139, errata 140-1) is granted in part and denied in part.

It is further ordered that Plaintiff is entitled to attorneys' fees in the amount of $560,587.50. The amount is divided as follows: $449,872.50 for Terri Keyser-Cooper, $98,560.00 for Diane Vaillancourt, and $12,155.00 for Peter Wetherall.

It is further ordered that Plaintiff is entitled to costs in the amount of $1,948.12, with $1,518.22 for Terri Keyser-Cooper and $429.90 for Clifford Miller.

The Clerk of Court is directed to enter judgment in favor of Plaintiff to reflect the amount of attorneys' fees and costs identified above.

DATED THIS 15th Day of July 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE